# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH A CELLULAR DEVICE ASSIGNED CALL NUMBER (773) 510-2928 STORED AT PREMISES CONTROLLED BY T-MOBILE USA

)
)
)
)
)
)

Case No. 22-mj-2349

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (This court has authority to issue this warrant under 18 U.S.C. 2703(c)(1)(A) and 2711(3)(A))

located in the _____ District of _____New Jersey_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit to Title 18 Offenses |
| 18 U.S.C. § 922(o) | Conspiracy to Commit to 924(c) Offenses |
| 18 U.S.C. § 922(a)(5) | Transferring a Firearm to Someone Outside the State of Residence |

The application is based on these facts:

See attached statement

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Melissa Vogel
_____
*Applicant's signature*

ATF SA Melissa Vogel
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __December 12, 2022__

_____
*Judge's signature*

City and state: __Nashville, Tennessee__

Jeffery S. Frensley, U.S. Magistrate Judge
*Printed name and title*

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR DEVICE ASSIGNED CALL
NUMBER **(773) 510-2928**, THAT IS
STORED AT PREMISES CONTROLLED
BY **T-MOBILE U.S.A.**

Case No.  22-mj-2349

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Melissa Vogel, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(773) 510-2928**, (the "**TARGET NUMBER**") that is stored at premises controlled by **T-Mobile U.S.A.**, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **T-Mobile U.S.A.** to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed in this capacity since August 2020. I am currently assigned to the Nashville Field Division, Nashville Group I Field Office, in Franklin, Tennessee. I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Brunswick,

Georgia. My current duties include investigating federal criminal offenses in the Middle District of Tennessee.

3.     This application is submitted in connection with a joint investigation by ATF Nashville Office, ATF Chicago Office, the Chicago Police Department, the United States Army Criminal Investigation Command, and the Internal Revenue Service- Criminal Investigation Division regarding false statements in connection with the acquisition of firearms or ammunition, engaging in the business of dealing firearms without a license, transfer of firearms to individuals not living in their State of residence, money laundering, the use or carry of a firearm in furtherance of drug trafficking crimes and/or crimes of violence, the use of these firearms for VICAR-related offenses that are part of a war between rival street gangs, and conspiracy to commit the aforementioned offenses.

4.     Your Affiant has participated in the investigation of the offenses discussed below. The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and local law enforcement officers, and information obtained from review of evidence and analyses of reports.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based upon my training and experience and the facts set forth in this affidavit, I submit that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will help provide evidence to law enforcement to which may assist or provide leads in the ongoing investigation for the events described below, and to determine the nature and scope of their activities which were committed in violation of Title 18, United States Code, Sections 922(a)(5)  that makes it unlawful for an unlicensed person to

2

transfer, sell, trade, give, transport, or deliver any firearm to any person who the transferor knows or has reasonable cause to believe does not reside in the State in which the transferor resides; 922(a)(6) that criminalizes false statements in connection with the acquisition of firearms or ammunition; 924(o) that makes it unlawful to conspire to commit drug trafficking offenses while using, carrying, or possessing a firearm and to commit crimes of violence, collectively referred to as 924(c) offenses; 1956(h) that makes it unlawful to conspire to commit money laundering; and 371 that makes it unlawful to conspire to commit offenses against the United States, including weapons trafficking offenses (hereinafter collectively referred to as the "**SUBJECT OFFENSES**"), have been committed here in the Middle District of Tennessee, by Brandon MILLER, Bryant LARKIN, and other co-conspirators. Based on the information detailed below, there is probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. On or about March 26, 2021, Chicago Police Department responded to a ShotSpotter (ShotSpotter is a gunshot detection and acoustic surveillance technology that uses sensors to detect, locate, and alert law enforcement to gunfire) at 2515 W. 79th Street, Chicago, Illinois. Chicago Police Department arrived on scene and observed a mass shooting; multiple people were shot, and one victim was pronounced dead on scene. After Chicago Police determined the scene safe, Chicago Police officers began to search for evidence related to the mass shooting. Multiple firearms were recovered from the shooting scene, in the area of 2515 W. 79th Street, Chicago, Illinois. The National Tracing Center conducting a trace of the firearms recovered from the shooting scene. Of the firearms recovered and traced, the following five firearms showed a short time to crime (relating the date of purchase to the date the firearm was

3

recovered): a Glock pistol, Model: 43X, Caliber: 9mm Luger, Serial Number: BSDN847; a

Glock pistol, Model: 17, Caliber: 9mm Luger, Serial Number: BRDK220; a Glock pistol, Model:

27, Caliber: .40, Serial Number: BPCF675; a Taurus pistol, Model: G3C, Caliber: 9mm, Serial

Number: ABM228091, a Glock pistol, Model: 17, 9mm Luger, Serial Number: BRWA198. The

aforementioned firearms were purchased at Federal Firearm Licensed (FFL) dealers in

Tennessee and Kentucky.

       7.     ATF Agents identified the following individuals who purchased the short time-to-

crime firearms recovered at the shooting scene in Chicago, Illinois: Demarcus ADAMS, Jarius

BRUNSON, and Brandon MILLER. At the time of the shooting described above, ADAMS,

BRUNSON, and MILLER each served as enlisted members of the United States Army at the Fort

Campbell military installation in Clarksville, Tennessee.

       8.     ATF Industry Operations Investigators (IOIs) and Special Agents requested ATF

Form 4473, Firearms Transaction Records, from FFLs in the Clarksville, Tennessee region and

discovered the following:

          a.     From December 2020 to April 1, 2021, ADAMS purchased

approximately twenty-seven (27) assorted firearms from multiple FFLs in Oak

Grove, Kentucky, Hopkinsville, Kentucky, and Clarksville, Tennessee.

          b.     From September 2019 to April 1, 2021, MILLER purchase

approximately thirty-two (32) assorted firearms from multiple FFLs in Oak Grove,

Kentucky and Clarksville, Tennessee.

          c.     From December 2020 to April 9, 2021, BRUNSON purchased

approximately thirty-two (32) assorted firearms, from multiple FFLs in Oak Grove,

Kentucky, Fort Campbell, Kentucky, Hopkinsville, Kentucky, and Paducah, Kentucky.

9.    On April 28, 2021, ATF Agents and Chicago Police Officers conducted an interview of ADAMS's first line supervisor at the Fort Campbell Army Criminal Investigation Division (CID) office. ADAMS's first line supervisor stated ADAMS did not live on post at Fort Campbell and was residing in the city of Clarksville, Tennessee. ADAMS's first line supervisor provided the address of 926 Hedge Apple Drive, Clarksville, Tennessee as ADAMS's current address and records showed ADAMS lived there since approximately December of 2020. ADAMS's first line supervisor stated that ADAMS's phone number is 256-394-2066. ADAMS's first line supervisor stated ADAMS resides with a roommate who is also a soldier in the United States Army.

10.    On April 28, 2021, ATF Agents and Chicago Police Officers conducted a *Mirandized* interview of ADAMS at the Fort Campbell Army CID office. During the interview, ADAMS made the following statements:

11.    ADAMS resides at 926 Hedge Apple Drive, Clarksville, Tennessee with his roommate Brandon MILLER. ADAMS has lived at the aforementioned address since December of 2020. ADAMS phone number is 256-394-2066. ADAMS and MILLER would go to gun shops in the Clarksville, Tennessee area and MILLER would point out firearms he (MILLER) liked. ADAMS would purchase the firearms for MILLER. After the firearm purchase was completed, the firearms would be brought back to their shared residence on Hedge Apple Drive, Clarksville, Tennessee and would be left out in a common area of the residence for MILLER to take possession. ADAMS did not know if the firearms he purchased were still in the residence on Hedge Apple Drive, Clarksville, Tennessee after MILLER took possession of the firearms. ADAMS believed

5

MILLER was taking the firearms to Chicago and selling the firearms on the street. MILLER would provide ADAMS cash or electronic funds through cash app to purchase the firearms for MILLER.

12.     Cash App is a mobile payment service developed by Square, Inc. that allows users to transfer money to one another using a mobile phone application. Apple Pay is a mobile payment and digital wallet service by Apple Inc. that allows users to make payments online, in applications, or to other users through the Messages application.

13.     Agents obtained consent to search through ADAMS's cellphone and conducted a Cellebrite extraction of ADAMS's device. Agents reviewed the Cellebrite extraction of ADAMS's device and observed the following text thread conversations between ADAMS, BRUNSON, and MILLER. MILLER's contact is saved in ADAMS's device as "Bro Miller" at phone number (XXX) XXX-3728[1].

On January 14, 2021:

- From Bro Miller: "We got some orders time to get on it mfs tryna send 1600 and 3400 and already got that 1700 and another mf tryna pay 800."

- From Demarcus Adams: "If they send it send me some and I'll grab some from here this weekend."

- From Bro Miller: "I'll give u that 1700 for them 3 mp 45 shields like Brunson had and that 556 rounds."

---

[1] The full number is known by your Affiant, but redacted here as this document will eventually be part of the public record

6

- From Bro Brunson: "I got 2 XD's and a Glock 27 I'm going to pick up after work."

- From Demarcus Adams: "Send it Apple Pay or Walmart to Walmart so it want take out to much bread."

- From Bro Miller: "I was gone give it to u cash."

On March 1, 2021:

- From Bro Miller: "Fat boy u better take out a lil loan they want a lot of guns"

- From Demarcus ADAMS: "I got to find some where."

2.     Additionally, Agents observed the following text thread conversation between ADAMS and MILLER:

On January 13, 2021:

- From Bro Miller: "We gotta get them 3 mp 45."

- From Demarcus ADAMS: "We can get them next week I was just gone let it calm down this week."

- From Bro Miller: "Hell yea I'm grabbing one toma."

- From Demarcus ADAMS: "Bet bet and I'll try to grab the other 2 Monday."

On April 24, 2021:

- From Bro Miller: "Can u grab some xd while u down there."

- From Demarcus ADAMS: "Everything already closed and don't nothing be open tomorrow."

- From Bro Miller: "Damn a pawn shop."

7

- From Demarcus ADAMS: "They closed to anywhere that sell guns be closed on Sundays here."

- From Bro Miller: "Damn we need a lot."

- From Demarcus ADAMS: "We a just have to start this week or some."

- From Bro Miller: "Yea we need like 12-14."

- From Demarcus ADAMS: "Bet."

14.    Additionally, Agents noted text conversation between MILLER and ADAMS relating to them living at the same residence and ADAMS assisting MILLER pay the mortgage.

15.    On April 28, 2021, ATF Agents executed a federal search warrant at MILLER and ADAMS's residence, located at 926 Hedge Apple Drive, Clarksville, Tennessee. During the search of the residence law enforcement located a total of forty-nine (49) empty firearm boxes.

16.    On May 5, 2021, ATF obtained a federal search warrant for MILLER's cellular phone. A Cellebrite extraction was conducted on MILLER's device. Agents reviewed the Cellebrite extraction of MILLER's device and observed the following text thread conversation between BRUNSON and MILLER (BRUNSON's contact is saved in MILLER's device as "Brunson" at phone number (XXX) XXX-6751)[2]:

On January 8, 2021:

-  BRUNSON sends MILLER two photographs of two pistols.

- From MILLER: "Ticket?"

- From BRUNSON: "8 for the XD 9 for the Glock."

---

[2] The full number is known by your Affiant, but redacted here as this document will eventually be part of the public record.

8

On February 11, 2021:

- From MILLER: "Send a pic of the military gun and glock."

- From BRUNSON: "I got you."

- From MILLER: "I got you like $1200 for both em."

- From BRUNSON: "1300?"

- BRUNSON sends a photograph of two handguns, one black and one tan.

- From MILLER: "I think 1250 max but that's a steal."

- From MILLER: "He said 1250."

- From BRUNSON: "That's a bet bro."

17.     Agents noted on February 23, 2021, MILLER and a Chicago, Illinois area code phone number had the following text message exchange:

- From a Chicago, IL phone number: "But I want to talk to u about the price n wat was it again."

- From MILLER: "Iight and wassup big dawg you said 3 .40s 3 9s and a Ar Pistol I said around 6700-6800."

- From MILLER: "You want sticks and eggs and everything to or u just want pipes I gotta drive 7 hrs gas and ona road taking the risk if not I'll jus bring the pipes only no rounds or sticks the store go up and down."

18.  Agents noted on April 15, 2021, MILLER texted a Chicago, Illinois area code phone number a picture of stacked handgun cases (which appear to be in a similar configuration law enforcement discovered the empty handgun cases in MILLER's residence) with the caption of "Ain't even half."

19. Section 10 of ATF Form 7, Application for Federal Firearms License, requires a fee of $200.00 to be paid by the applicant to ATF to be a "Dealer in Firearms Other than Destructive Devices (Includes: rifles, shotguns, pistols, revolvers, gunsmith activities, and National Firearms Act (NFA) weapons).

20. Section 21a of ATF Form 4473, Firearms Transaction Record asks the following question, "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you. Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b." ATF Form 4473 provides a further warning to the buyer of the firearm, "I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

21. On May 5, 2021, the Federal Licensing System (FLS) was queried for ADAMS's, BRUNSON's, and MILLER's information. The FLS query revealed ADAMS, BRUNSON, and MILLER do not have a Federal Firearms License.

22. On May 11, 2021, a federal arrest warrant was obtained for MILLER. MILLER was charged in the Middle District of Tennessee with criminal violations of Title 18, United States Code, Sections 922(a)(5) (an unlicensed person transfer, sell, trade, give, transport, or deliver any firearm to any person who the transferor knows or has reasonable cause to believe does not reside in the State in which the transferor resides), 922(a)(6) (false statements in connection with the acquisition of firearms or ammunition), 924(o) (conspiracy to commit 924c offenses) 1956(h) (conspiracy to commit money laundering), and 371 (conspiracy).

10

23. A further review of the Cellebrite extraction of MILLER's device revealed numerous text conversations with individuals placing firearm orders to MILLER. Agents noted a text conversation between MILLER and phone number, **773- 510-2928**, which has been identified as belonging to Bryant LARKIN. There are numerous conversations between MILLER and LARKIN, to include LARKIN inquiring about purchasing firearms and ammunition from MILLER and the timing of MILLER's delivery of firearms and ammunition to Chicago, Illinois.

24. Agents noted text thread conversations between MILLER and a contact saved in MILLER's device as "Bryan" at phone number **773- 510-2928**

25. On March 24, 2021, MILLER texted LARKIN two photographs of a firearm.

26. Agents noted the following text thread conversations between MILLER and LARKIN:

On April 1, 2021

- From MILLER: "I got 4 so far I'm still working to get some more AINT no funeral arrangements?"
- From Bryan: "Yea I'm call u"

On April 2, 2021:

- From MILLER: "I got work today on Ronnie I'm coming toma morning so ima be there like 1 pm toma"

On April 3, 2021:

- From MILLER: "90 miles out"

On April 4, 2021:

- From MILLER: "Y'all got my demo and other money?"
- From Bryan: "Boi wat other money and yo shit here"

11

- From MILLER: "where the accident happen"

- From Bryan: "94 Stoney"

- From MILLER: "I gave y'all 8 I only got 4bucks"

- From Bryan: "And the cash app"

- From MILLER: "Y'all got the switches right"

- From Bryan: "U didn't bring them"

- From MILLER: "They might be ina car"

- From Bryan: "U said u ain't bring them"

- From MILLER: "I got a concussion I got time loss I'm tryna see where my car at now"

On April 6, 2021:

- From MILLER: "G them switches was ina black capsule in my console and wen I got there it wasn't there folks prob got em"

- From Bryan: "U said you left"

- From MILLER: "Naw they was wit me I'm good now I removed everything on gang they was"

26. Agents noted on April 15, 2021, MILLER texted LARKIN a picture of stacked handgun cases with the caption of "Ain't even half."

27. On March 28, 2022, a federal arrest warrant was obtained for Bryant LARKIN. LARKIN was charged in the Middle District of Tennessee with criminal violations of Title 18, United States Code, Sections 924(o) (conspiracy to commit 924c offenses) 1956(h) (conspiracy to commit money laundering), and 371 (conspiracy). LARKIN was arrested on March 30, 2022.

12

28. Based on your affiant's training and experience, your affiant knows that a person who is involved in criminal activity often uses electronic devices, including but not limited to wireless telephones, to aid in their criminal activities. Your affiant knows, based on his training and experience, suspects frequently communicate with each other prior to, during and/or after the commission of a crime, and frequently utilize cellular phones during the commission of a crime. The information obtained from this cellphone usage can be of significant assistance to the investigation and evidence in a subsequent criminal prosecution by showing the communication records/pattern(s) between any possible suspect and co-conspirators. Location information and call detail records generated by the use of cellphones can indicate the general geographic area that the mobile device was located at, as well as provide investigative leads of whether witnesses or suspects communicated with anyone prior to, during and/or after a criminal event, which can associate the cellular phone/device to a specific suspect or individual.

29. Based on your affiant's training and experience, your affiant knows that acquiring an extended period of call detail records can assist in establishing a pattern of life, or use, of a target telephone. Longer period of records outside the immediate date/time frame of the underlying crime can assist investigators in establishing calling patterns of the TARGET and prevalent cell sectors utilized by **TARGET NUMBER**. The establishment of this pattern of life, or use, is critical in helping investigators determine if, and when, this calling pattern changes, intensifies, or wanes during relevant time periods within the investigation. These changes in the pattern of life can also assist investigators in identifying any co-conspirator(s) who may have provided aid or counsel during the relevant time period surrounding the conception, planning, commission and/or cover-up of the criminal activity.

13

30. Based on your affiant's training and experience, your affiant knows that historical cell-site records identify the cellular tower that a target phone used when engaging in a communication such as a call or text. Many cellular towers have multiple antenna faces, or "sectors," each of which provides service to a particular portion of the tower's geographic service area. In such cases, the historical cell-site records will also identify the sector of the cell tower that the phone used during the communication. Investigators can use this information about the cell tower and sector that were used by a phone to determine the general area in which the target phone was likely to be at the time that a particular communication occurred. While the precision of this information varies depending on factors including the distance between cellular towers, at best, cell-site location information will reveal the neighborhood in which a phone was likely to have been located.

31. Based on your affiant's training and experience, your affiant knows that certain events like phone calls, text messages, or data applications updating can cause the Service Provider to initiate a signal on their network to establish the location of a device. This location data is then stored by the Service Provider, such as **T-Mobile U.S.A.** Such information as date, time, latitude, longitude, cell sites, and accuracy of the location data are stored and can be provided to law enforcement. Not every call, text message, or data application update causes his data to be created and stored. Therefore, there is no way to know what exact information the Service Provider has until it is reviewed. This data can be helpful to investigators when trying to locate the user of a given cellular device and/or to establish a pattern of life for the user of the given cellular device.

32. The requested call detail records are evidence that will serve to potentially identify investigative leads and avenues forward, prove or disprove known and future

14

investigative conclusions, and/or corroborate or disprove or discredit (as applicable) witness and/or suspect statements. Investigators want to learn if the cell site data for the user of T-Mobile U.S.A phone number **773-510-2928**show that the devices accessed cell sites in the area of the crimes during the relevant time frames.  This will be a significant piece of information that will help investigators to know whether or not the user of the TARGET NUMBER should be considered as a suspect in this investigation

33. Based on your affiant's training and experience, I have learned that **T-Mobile U.S.A.** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

34. Based on my training and experience, I know that **T-Mobile U.S.A.** can collect cell-site data about the TARGET NUMBER.  I also know that wireless providers such as **T-Mobile U.S.A.** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for

15

various business-related purposes. Based on my training and experience, I know that wireless providers such as **T-Mobile U.S.A.** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **T-Mobile U.S.A.** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET NUMBER user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

35. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

36. I further request that the Court direct **T-Mobile U.S.A.** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **T-Mobile U.S.A.**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be restricted until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to restrict these documents

16

because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(773) 510-2928**, ("the Account"), that are stored at premises controlled by **T-Mobile U.S.A.** ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.    Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of January 1, 2020 to April 28, 2021:

    a.   The following information about the customers or subscribers of the Account:

        i.   Names (including subscriber names, user names, and screen names);

        ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.   Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

        iv.   All device information identifying the specific cellular phone, tablet etc. related to this phone number **(773) 510-2928** and account, to include IMSI, IMEI, MEID, and ESN

        v.   Local and long distance telephone connection records;

        vi.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        vii.   Length of service (including start date and closing date (if any)) and types of service utilized;

19

viii. Physical address where wireless telephone contract was initiated, or the contract was initiated;

ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions);

ii. All communications records, including originating and terminating cellular site and sector information, voice call detail, SMS/text message detail, data/internet detail, and cellular network identifying information;

iii. Non-content information associated with the contents of any communication or file stored by or for the account(s), such as the source and destination email addresses, IP addresses and ports;

iv. All network connections related to this account regardless of the technology utilized (3G, 4G, 5G, Bluetooth, Wi-Fi, MIMO, VoLTE, etc.) or how the transactions were routed and/or stored throughout the system;

v. Correspondence and notes of records related to the account(s);

20

vi. The providers cell site list for the time period in this legal demand, also known as a document that contains the master listing of all cell site numbers and their locations;

vii. The providers reference documents that are used as a key for communication detail records;

viii. T-Mobile U.S.A Network Event Location System (NELOS) records, also known as historical precision location data, Timing Advance (TDOA) records, time on tower data, and any other location data that is available. This is to include global positioning system (GPS) data, precision location records, and/or system generated estimates of locations. This shall include any other similar system, report, and/or data within the cellular networks regardless of name. Interim cell sites are also required for the target number.

ix. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.

c. Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.

d. Content of communications to include text messages (SMS), multimedia messages (MMS), SPAM messaging system, and any other forms of messaging through the cellular network. This shall also include emails and any other stored content that may be stored in any systems of the provider.

21

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations. Title 18, United States Code, Sections 922(a)(5) (an unlicensed person transfer, sell, trade, give, transport, or deliver any firearm to any person who the transferor knows or has reasonable cause to believe does not reside in the State in which the transferor resides), 922(a)(6) (false statements in connection with the acquisition of firearms or ammunition), 922(a)(1)(A) (engaging in the business of dealing in firearms without a license), 924(o) (conspiracy to commit 924c offenses), 1956(h) (conspiracy to commit money laundering), and 371 (conspiracy), the "**Subject Offenses**", as it relates to the ongoing investigation. During the period January 1, 2020 to April 28, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

Case 3:22-mj-02349   Document 1-1   Filed 12/12/22   Page 23 of 25 PageID #: 30

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **T-Mobile U.S.A.**, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **T-Mobile U.S.A.** The attached records consist of _____ (pages/CDs/megabytes)]. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **T-Mobile U.S.A.**, and they were made by **T-Mobile U.S.A.** as a regular practice; and

b.      such records were generated by **T-Mobile U.S.A.** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **T-Mobile U.S.A.** in a manner to ensure that they are true duplicates of the original records; and

23

2.      the process or system is regularly verified by **T-Mobile U.S.A.**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____      _____
Date                                            Signature